IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HILMI HAMMAD ELADEM,

          Petitioner,

    v.

JOSHUA HIGHBERGER,

          Respondent.

Case No. 6:22-cv-01381-MO

OPINION AND ORDER

Julie Pitt Vandiver
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204

      Attorney for Petitioner

Dan Rayfield, Attorney General
Daniel T. Toulson, Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

      Attorneys for Respondent

1 – OPINION AND ORDER

MOSMAN, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging the legality of his Washington County Judgment dated August 18, 2014. For the reasons that follow, the Amended Petition for Writ of Habeas Corpus (#37) is denied.

## BACKGROUND

In 2000, Petitioner lived with his girlfriend and her two children. One of those two children, DV, purportedly told a friend that Petitioner was sexually abusing her. When the friend disclosed those statements, an investigation took place but DV denied that Petitioner had ever abused her and also denied ever making the statements that her friend had attributed to her. As a result, the case was determined to be unfounded. ECF 49-1, p. 5.

Approximately 13 years later, DV informed her natural father that Petitioner, had, in fact, sexually abused both her and her brother for a number of years while the children were young. After DV's father confirmed the abuse with DV's brother, he reported it to law enforcement officials.

On December 20, 2013, the Washington County Grand Jury indicted Petitioner on five counts of Sexual Abuse in the First Degree, seven counts of Sodomy in the First Degree, and one count each of Unlawful Sexual Penetration in the First Degree, Rape in the First Degree, and Attempted Sodomy in the First Degree. Respondent's Exhibit 102. The Attempted Sodomy charge was dismissed prior to trial, and a jury found Petitioner guilty of the remaining 14 counts. As a result, the trial court sentenced him to 930 months in prison.

Petitioner took a direct appeal during which he filed both counseled and *pro se* briefs that raised a total of five assignments of error. Respondent's Exhibits 108 & 109. The Oregon Court of Appeals issued a written opinion in which it denied relief on all of his claims. The appellate

court provided reasoning as to its denial of Petitioner's claim that his prosecution as to Rape in the

First Degree (Count 7) was untimely, and summarily denied relief on the remaining claims. *State*

*v. Eladem,* 290 Or. App. 212, 414 P.3d 426 (2018). Petitioner filed a counseled Petition for Review

as well as a *pro se* Supplemental Petition for Review to the Oregon Supreme Court, but the Oregon

Supreme Court denied review. Respondent's Exhibits 112-114.

Petitioner next filed for post-conviction relief ("PCR") in Marion County where the PCR

court denied relief on all nine of his claims. The Oregon Court of Appeals affirmed that decision

without issuing a written opinion, and the Oregon Supreme Court denied review.[1] *Eladem v.*

*Laney,* 316 Or. App. 285, 500 P.3d  (2021), *rev. denied* 370 Or. 197, 514 P.3d 1110 (2022).

Petitioner filed this case on September 12, 2022. After Respondent filed the record, the

Court appointed the Federal Public Defender to represent Petitioner in this proceeding. On

December 7, 2023, and with the assistance of appointed counsel, Petitioner filed his Amended

Petition for Writ of Habeas Corpus (#37) in which he raises three grounds for relief:

> **Ground I:** Petitioner was denied his right to effective assistance of
> trial counsel in violation of the Sixth and Fourteenth Amendments
> when counsel failed in the following way:
>
> **A.** Counsel failed to preserve a meritorious objection against the
> State's election and proof on Counts 1-3. In the criminal case, the
> indictment alleged that petitioner committed first-degree sexual
> abuse as alleged in Counts 1, 2 and 3 by "causing" D to "touch the
> defendant's penis." The State was therefore required to prove that
> petitioner committed the crime in that particular way. However, the
> State elected at trial to pursue a different factual scenario. The State
> specifically argued that petitioner committed Counts 1-3 by
> touching D's vaginal area. Because the State did not elect to prove
> that scenario and did not rely on those facts to prove the charges at
> issue, petitioner had a meritorious argument that, pursuant to the

---

[1] Petitioner also filed a successive PCR action in which the PCR court granted summary judgment
in the State's favor. Respondent's Exhibits 158-163. That successive PCR action is not relevant to
this federal habeas corpus proceeding.

State's election, the State had thereby failed to prove the criminal conduct as alleged in the indictment. Yet, counsel failed to lodge an objection that the State could not have elected to prove the theory of criminal liability that it did, and failed to argue that petitioner was entitled to a judgment of acquittal on Counts 1, 2 and 3.

**Ground II:** Petitioner asserts that his right to due process of law under the Fourteenth Amendment was violated as a result of the State failing to disclose exculpatory evidence as required by *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. Petitioner's habeas counsel will be investigating this asserted claim. The claim is included here in order to preserve the ability to argue the claim at a later time should substantial supporting facts be discovered. *See Mayle v. Felix*, 545 U.S. 644 (2006) (restricting habeas petitioner's ability to rely on the relation back doctrine). Depending on the results of future investigation, petitioner may seek leave to further plead this claim with additional facts. (Otherwise the claim will be withdrawn).

**Ground III:** Petitioner was denied due process of law under the Fourteenth Amendment when the State court entered judgments of convictions on Counts 1, 2 and 3 of the indictment based on insufficient evidence. *See Jackson v. Virginia*, 443 U.S. (307 1979). As petitioner argued in his direct appeal, the State, at trial, elected to rely on evidence establishing a different means of committing the crime of sexual abuse than that which was specifically charged in the indictment. *See* Resp. Ex. 108, pp. 30-31.

Amended Petition (#37), p. 3.

Respondent asks the Court to deny relief on the Amended Petition because: (1) Ground One is untimely because it does not relate back to the original Petition for Writ of Habeas Corpus (#1); (2) Ground Two is too vague and conclusory to state a claim upon which federal habeas corpus relief can be granted, and is also procedurally defaulted because Petitioner did not fairly present it to Oregon's state courts; and (3) the state courts reasonably denied relief on Grounds One and Three.

///

///

**DISCUSSION**

I.      **Timeliness (Ground One)**

As Ground One, Petitioner alleges that his trial attorney was ineffective when he permitted

the State to prove Petitioner's guilt as to three counts of Sexual Abuse in the First Degree using a

different theory than was contained in the Indictment. He points out that in the Indictment, Counts

1, 2, and 3 accused him of Sexual Abuse by causing DV to touch his penis. Respondent's Exhibit

102, p. 1. He contends that during trial, the State pursued a different theory when it argued that

Petitioner was guilty of Counts 1, 2, and 3 because he had touched DV's vaginal area. He asserts

that competent counsel would have objected, sought a mistrial, and sought a judgment of acquittal

on Counts 1, 2, and 3.[2]

Under Fed R. Civ. P. 15(c)(1)(B), an amendment of a pleading will relate back to the date

of the original pleading when "the amendment asserts a claim or defense that arose out of the

conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."

Thus, a new claim contained in an amended habeas corpus petition filed after the expiration of the

AEDPA's one-year statute of limitations will only relate back to the timely-filed pleading if the

claim arises out of "the same conduct, transaction or occurrence" as a claim in the timely pleading.

---

[2] Petitioner also argues in his briefing that his trial attorney failed to argue to the jury that the prosecution failed to establish the conduct charged in the Indictment as to Counts 1, 2, and 3, but this claim is not contained within the Amended Petition. *See* Rule 2(c) of the Rules Governing Section 2254 Cases (habeas petitions are required to "specify all the grounds for relief which are available to the petitioner"). Even if he had included the claim, as Respondent points out, he failed to fairly present the claim to Oregon's state courts as required by *Rose v. Lundy,* 455 U.S. 509, 519 (1982), thereby leaving such a claim procedurally defaulted and ineligible for habeas corpus review. *See* Respondent's Exhibit 155 (Petition for Review to the Oregon Supreme Court asking only whether counsel was ineffective for failing to object to the State's reliance on a theory of criminal liability that varied from that alleged in the Indictment). Even if the claim were properly before the Court, for the reasons stated in Section III of this Opinion this claim would not entitle Petitioner to habeas corpus relief.

*Mayle v.* Felix, 545 U.S. 644 (2005). Relation back is permitted "only when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in 'both time and type' from the originally raised episodes." *Id* at 657. If the new claim adds "a new legal theory tied to the same operative facts as those initially alleged," it will be sufficient to relate back to the original petition because such a scenario constitutes an "unremarkable application of the relation-back rule." *Id* at 659, n. 5.

Due to the passage of time preceding the filing of the Amended Petition, Ground One of that pleading is not timely unless it relates back to the filing of the original Petition. Petitioner's original Petition for Writ of Habeas Corpus (#1) did not contain any claims asserting ineffective assistance of counsel, but the pleading did raise a due process claim that the State had failed to prove his guilt as to Counts 1, 2, and 3. In doing so, he argued that those charges specifically alleged that he had abused DV by causing her to touch his penis and the State was therefore "bound to prove that defendant committed sexual abuse in that particular way" but that the State had, instead, "identified three instances where defendant had touched [DV's] vagina and asked the jury to find defendant guilty of Counts 1, 2 and 3 based on that evidence alone." Petition (#1), p. 11.

The "time and type" language of *Felix* "refers not to the claims or grounds for relief. Rather, it refers to the facts that support those grounds." *Ha Van Nguyen v. Curry,* 736 F.3d 1287, 1297 (9th Cir. 2013) *abrogated on other grounds by Davila v. Davis,* 582 U.S. 521 (2017). Petitioner's ineffective assistance of counsel claim in Ground One of the Amended Petition focuses on the same fundamental facts as the due process claim he raised in Ground One of his original Petition, *i.e.*, whether the State changed its theory of the case during the course of the trial and whether it proved the crimes as set out in Counts 1, 2, and 3 of the Indictment which were predicated on his forcing DV to touch his penis, not whether he touched her vagina. Due to the common core of

operative facts, Ground One of the Amended Petition relates back to the original Petition such that it is timely and will be considered on its merits.

## II.    Failure to State a Claim (Ground Two)

As Ground Two, Petitioner alleges that the State violated his right to due process when it failed to disclose exculpatory evidence to him. He does not identify the nature of that evidence and, instead, states within his Amended Petition his intention to withdraw the claim if he is unable to replead it with additional facts. Amended Petition (#37), p. 3. Despite that stated intention, Petitioner does not seek leave to replead this claim nor does he ask to withdraw the claim. Instead, he asserts that although he cannot prove his claim, he has decided not to withdraw it. Memo in Support (#57), p. 2. Ground Two does not entitle Petitioner to habeas corpus relief because: (1) he has not stated a claim upon which the Court can grant relief; and (2) even assuming he states a valid claim for pleading purposes, he has not carried his burden of proof. *See Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (habeas petitioners bear the burden of proving their claims). Ground Two is therefore dismissed.

## III.    The Merits

### A.    Standard of Review

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are

materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410. Twenty-eight U.S.C. § 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents. It goes no farther." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Twenty-eight U.S.C. § 2254(d)(2) allows a petitioner to "challenge the substance of the state court's findings and attempt to show that those findings were not supported by substantial evidence in the state court record." *Hibbler v. Benedetti*, 693 F.3d 1140, 1146 (9th Cir. 2012). A state court renders an unreasonable determination of the facts if it "plainly misapprehends or misstates the record in making its findings or where the state court has before it, yet apparently ignores, evidence that supports petitioner's claim." *Andrew v. Davis,* 944 F.3d 1092, 1107 (9th Cir. 2019) (internal quotations omitted). A federal habeas court cannot overturn a state court decision on factual grounds "unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). This is a "'daunting standard—one that will be satisfied in relatively few cases,' especially because we must be 'particularly deferential to our state-court colleagues.'" *Hernandez v. Holland*, 750 F.3d 843, 857 (9th Cir. 2014) (quoting *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004)).

When a state court reaches a decision on the merits but provides no reasoning to support

its conclusion, the federal habeas court must conduct an independent review of the record to

determine whether the state court clearly erred in its application of Supreme Court law. *Delgado*

*v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). In such an instance, although the federal court

independently reviews the record, it still lends deference to the state court's ultimate decision and

will only grant habeas relief if the state court's decision was objectively unreasonable. *Richter,*

562 U.S. at 98; *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

B.      **Analysis**

1.      Ground One: Ineffective Assistance of Counsel

Counts 1, 2, and 3 of the Indictment charged Petitioner with Sexual Abuse in the First

Degree by causing DV to touch his penis. Respondent's Exhibit 102, p. 1. During her opening

statement, the prosecutor framed those charges as follows:

> Sexual—the nutshell of what is Sexual Abuse in the First
> Degree is it's subjecting someone under the age of 14 to something
> called sexual contact. Okay? That's what it is. Sexual contact,
> person under the age of 14. Sexual contact is any touching of the
> sexual or intimate parts of – for the purpose of arousing either the
> adult or the child. Okay?
>
> It's a touching on a specific part in a body. It has to be a
> sexual or a private part of the body. It has to be a sexually motivated
> touching. Someone -- there has to be a purpose. So, no, bathing your
> child and you touch your child, that's not sexual abuse.
>
> It becomes sexual abuse when there's a sexual motive or a
> sexual intent in the touch. Sexual abuse – that's what sexual abuse
> in the first degree is. Counts 1 through 3 are sexual abuse by causing
> [DV] to touch the defendant's penis with her hand or with her body,
> not just with her hand.
>
> It's not alleged like that. It's by causing [DV] to touch her
> [sic] penis. So those will be three charges for times when he caused

> her to come into contact – some part of her to come into contact with
> his penis.

Trial Transcript, pp. 84-85.

As will be discussed in Section III(B)(2) of this Opinion, the State presented evidence during the trial that Petitioner had touched DV's vagina and also caused her to touch his penis on numerous occasions. Following the presentation of the evidence, the prosecutor provided the trial court and defense counsel with its form entitled "State's Elections Prior to Deliberations." That document referred to Count 1 as "The first time – [DV]," Count 2 as "The first time, mom in shower – [DV]," and Count 3 as "The first time, after school – [DV]." Respondent's Exhibit 123. The trial judge indicated that the language was somewhat confusing as to Counts 1 and 3 because DV's testimony was that both incidents of abuse occurred after school. As a result, the prosecutor reworded the State's election to clarify that Count 1 covered the first time after school, and Count 3 constituted the second time after school. Trial Transcript, pp. 319-20. At no time were the State's elections for Counts 1, 2, and 3 comprised of a particular type of sexual contact.

The following morning, defense counsel made a general motion for judgment of acquittal that the trial judge denied. *Id.* at 336-37. The case proceeded to closing arguments where the prosecutor made reference to Counts 1-3 as involving Petitioner touching DV's vaginal area, not touching his penis. First, when she explained the nature of sexual abuse to the jury, she referenced "Counts 1, 2, and 3 – taking his hand and fondling her vaginal area and her labia and rubbing her on the outside." *Id.* at 365-66. She then laid out her argument as to each of these charges as follows:

> I'm going to turn to the charges in the indictment as they
> related to [DV]. Count 1 is Sexual abuse in the First Degree. The
> event, first time after school. Again, the tying of the event to the
> crime is something that's also done in your paperwork that Judge
> Fun will give you.

10 – OPINION AND ORDER

And it's also clarified on your verdict form. But for purposes of closing argument, let's be clear so that you know when she testified what the different things she testified to, what counts those stories – or vignettes or whatever you want to call them, what they apply to.

So in Count 1, Sexual Abuse in the First Degree, when she talks about the first time that she can remember with clarity – remember she used that word, with clarity that she had been sexually abused, she talked about it being after school.

She talked about him telling her to go upstairs. She talked about him locking the door. She talked about him touching her vaginal area, taking off her clothes, taking off his clothes, laying on top of her and rubbing his penis on her and then flipping her over and rubbing his penis up on her, that that is the event for Sexual Abuse in the First Degree for Count 1.

Count 2, Sexual – oh, she was talking about – I'm sorry. I'm sorry, I just botched that and I need to back up. And I apologize for the confusion.

For the –for the first time after school with – that was when she was on the stand – and I apologize – she was talking about him using his hands and touching her vaginal area and that that kind of touching happened to her on more than one occasion.

She talked about him using his hands to touch her on the – on her vaginal area. She remembered that happening both after school and when her mom was in the shower. She talked about that happening many, many, many more than three times.

She talked about that happening both after school, the first time that her mom was in the shower, and many times on another separate occasion after school. So those Sexual Abuse in the First Degree charges are from when [DV] took the stand and she articulated that there were times that he used his hand and he fondled her vaginal area and that he did that both after school and when Mom was in the shower and that he did it multiple times to her, both after school and when Mom was [in] the shower. So that's what those first three counts are for.

*Id*. at 371-72.

Petitioner argues that by referencing a method of sexual contact in her closing argument that differed from the allegations in the Indictment, the prosecutor changed her charging elections as to Counts 1, 2, and 3. He contends that trial counsel should have brought a sufficiently specific motion for judgment of acquittal after the close of evidence because the prosecutor had focused her case on proving Petitioner touched DV's vaginal area as opposed to causing DV to touch his penis as the Indictment had alleged. He also asserts that once the prosecutor argued in closing that Counts 1-3 were proven by DV's testimony that Petitioner touched her vaginal area, it was incumbent on defense counsel to object or move for a mistrial because the argument and proof materially varied from the theory of criminal culpability contained within the Indictment.

The Court uses the general two-part test established by the Supreme Court to determine whether Petitioner received ineffective assistance of counsel. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). First, Petitioner must show that his counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id* at 689.

Second, Petitioner must show that his counsel's performance prejudiced the defense. The appropriate test for prejudice is whether Petitioner can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694. A reasonable probability is one which is sufficient to undermine confidence in the outcome of the trial. *Id* at 696. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. 86, 112 (2011) (citing *Strickland,* 466 U.S. at 693). When *Strickland's* general standard is combined with the standard of review governing 28 U.S.C. § 2254

habeas corpus cases, the result is a "doubly deferential judicial review." *Mirzayance*, 556 U.S. at

122.

      During Petitioner's PCR case, trial counsel submitted a Declaration in which he explained

his decisions pertaining to the issues Petitioner raises in Ground One:

> 4.    . . . I did not move for a judgment of acquittal on counts 1,
> 2, and 3 because I did not believe that the specific allegation of child
> sexual contact, causing a child to touch Mr. Eladem's penis vs. Mr.
> Eladem touching a child's vagina, was a material variance. If there
> is case law which established that variance as a material variance
> then I believe my failure to specifically request a judgment of
> acquittal would have been ineffective assistance of counsel.
>
> 5.    . . . Mr. Eladem alleges that I should have objected and
> requested a mistrial and argued more in closing that the State's
> elections were different from the Indictment. In my experience, and
> for the reasons discussed above, I had no reason to believe that the
> objection or motion for a mistrial on the basis now suggested by Mr.
> Eladem had a reasonable likelihood of success. I focused my closing
> argument on areas that I believed were the strongest and most likely
> to resonate with the jury to Mr. Eladem's benefit.
>
>                         \* \* \* \* \*
>
> 8.    . . . Mr. Eladem alleges that I should have objected and
> moved for a mistrial during the State's closing argument and argued
> that the State had made charging elections outside the scope of the
> Indictment.  For the reasons discussed throughout this declaration,
> I did not believe that an objection or motion for mistrial regarding
> the State's election would have been successful. As noted
> previously, if case law is contrary to my assessment at the time then
> I believe that a failure to request a mistrial would amount to
> ineffective assistance of counsel.

Respondent's Exhibit 147, pp. 3-4.

      At the conclusion of the PCR proceedings, the PCR court found trial counsel to be credible,

and Petitioner not to be credible. Respondent's Exhibit 149, pp. 36, 41; Respondent's Exhibit 150,

p. 2. More importantly, it set out state law conclusions pertaining to the viability of the argument

Petitioner believes his defense attorney should have made. It determined that the prosecutor's statements did not amount to a "material variance," that "the election elected the incidents in time, not how,"[3] and that any objection on the basis that the prosecutor's closing argument constituted an "election" would have been futile. Respondent's Exhibit 149, pp. 39-40.

Petitioner maintains that the PCR court unreasonably applied *Strickland*, but such a conclusion necessarily requires this Court to disregard the PCR court's application of Oregon state law to this case. A federal court adjudicating a habeas corpus is case is bound by such determinations. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[W]e reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Floyd v. Filson*, 949 F.3d 1128, 1146 (9th Cir. 2020) (even a state court's misreading of state law is not a ground for habeas corpus relief). Consequently, this Court accepts that in presenting its case, the State did not materially vary from the Indictment during the presentation of its case. The Court also accepts as true the PCR court's determination that any objection involving this issue would have been futile. Taking those conclusions as true, counsel was not under any obligation to object, move for a mistrial, or file a specific motion for judgement of acquittal based upon the State's presentation of its case in light of the wording contained within the Indictment. Counsel's performance therefore did not fall below an objective standard of reasonableness. *See Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994), *rev. denied*, 513 U.S. 1001 (1994) (an attorney is not required to file a motion he knows to be meritless).

---

[3] Consistent with this determination, the verdict form identified Counts 1, 2, and 3 by incident, not by method. Count 1 addressed the "first 'after school' event," Count 2 covered the "first 'while mom in shower' event," and Count 3 encompassed the "second 'after school' event." Respondent's Exhibit 142.

Even if the Court were to conclude that counsel should have objected or otherwise argued these issues, Petitioner would be unable to establish prejudice. Although much of the prosecutor's evidence and her closing argument focused on vaginal touching as to Counts 1-3, not only did Oregon law undermine the viability of the arguments Petitioner wanted counsel to make, but her closing argument was not evidence, and the trial court properly instructed the jury specifically on that point both before the trial began and in the wake of the parties' closing arguments. Trial Transcript, pp. 50, 414. The trial court not only instructed the jury to look to the evidence from the trial, but also explicitly instructed it that Counts 1-3 alleged that Petitioner subjected DV to sexual contact by causing her to touch Petitioner's penis. *Id*. at 418, 420. The jurors presumably followed the trial judge's instructions because "[a] jury is presumed to follow its instructions," *Weeks v. Angelone,* 528 U.S. 225, 234 (2000) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)), and "arguments of counsel generally carry less weight with a jury than do instructions from the court." *Boyde v. California,* 494 U.S. 370, 384 (1990). For all of these reasons, the PCR court's decision did not involve an unreasonable application of clearly established federal law.

2.    **Ground Three: Sufficiency of the Evidence**

Petitioner also argues that the trial court violated his right to due process when it entered convictions as to Counts 1, 2, and 3 even though the Indictment alleged a different kind of sexual contact than the prosecution argued and proved at trial. Because the state courts did not issue a reasoned decision on this issue, the Court conducts an independent review of the record as to this claim.

When reviewing a habeas corpus claim based on insufficient evidence, "[t]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable

doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). When the record supports conflicting inferences, courts must presume the jury resolved the conflicts in favor of the prosecution. *Id.* at 326. Because this issue occurs in the habeas corpus context which carries with it a stringent standard of review, this court is required to apply a "double dose of deference" to the state court decision, a level of deference "that can rarely be surmounted." *Boyer v. Belleque*, 659 F.3d 957, 964 (9th Cir. 2011).

Sexual Abuse in the First Degree in Oregon is satisfied if a person subjects a child under the age of 14 to "sexual contact." ORS 163.427(1)(a)(A). Oregon defines "sexual contact" as "any touching of the sexual or other intimate parts of a person or causing such person to touch the sexual or other intimate parts of the actor for the purpose of arousing or gratifying the sexual desire of either party." ORS 163.305(6). Again, the PCR court found that the precise method of sexual abuse was not material to the contents of the Indictment, thus the State was not required to prove any particular form of sexual contact to satisfy Counts 1-3.

DV specifically testified at trial that the first time she vividly remembered Petitioner abusing her was when she was in first grade. After school he asked her to lie on the bed and he "began rubbing my vaginal area and eventually . . . put me face down, took off my pants, took off his clothes, and rubbed his penis between my butt cheeks until he finished on my back." Trial Transcript, pp. 263-64. DV testified that it was "usual" for Petitioner to "turn me on my stomach and face down and then ejaculate[]." *Id* at 269. The prosecutor reiterated, Petitioner "would have you naked and rub on your – between your butt cheeks?" *Id.* at 300. DV responded in the affirmative, and also agreed that she had told an investigating detective that this had happened almost daily when she would come home from school. *Id.*

DV also testified to other incidents of sexual abuse involving vaginal touching, something the prosecutor at times focused on, including the incident where DV's mother was in the shower (Count 2). *See, e.g.,* 264-266. Under Oregon law, the method of touching was not a material element of the statute (per the PCR court), and DV's trial testimony provided ample evidence that Petitioner had sexually abused her while her mother was in the shower (Count 2) and multiple times after school (Counts 1 & 3). Because the evidence, viewed in the light most favorable to the State, provided sufficient evidence of Petitioner's guilt as to Counts 1, 2, and 3, due process is satisfied and the state court denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law.

## CONCLUSION

For the reasons identified above, the Amended Petition for Writ of Habeas Corpus (#37) is denied. The Court grants a Certificate of Appealability as to: (1) whether Ground One relates back to the original Petition for Writ of Habeas Corpus (#1) so as to render the claim timely; and (2) whether Ground One or Ground Three entitles Petitioner to habeas corpus relief. The Court declines to issue a Certificate of Appealability as to any other issue.

IT IS SO ORDERED.

8/26/2025
_____
        DATE

*Michael W. Mosman*
_____
        Michael W. Mosman
        United States District Judge

17 – OPINION AND ORDER